SARAH C. NEWKIRK, complainant,

v.

ANNA M. PLACE and JAMES K. PLACE, defendants.

1. The third section of the statute of frauds (Rev. p. 445) does not require that trusts of land shall be created by writing, but only that they shall be manifested and proven by that means; and for this purpose letters or other documents written long after the creation of the trust are sufficient.

2. The writings must show the terms and subject of the trust, and for this purpose they may be construed in the light of the established facts and circumstances of the case.

Final hearing on bill, answer and proofs.

*Mr. Jonas S. Miller*, for the complainant.

*Mr. James P. Northrop*, for the defendants.

PITNEY, V. C.

The object of this bill is to obtain a decree declaring that the defendant Anna M. Place holds the title to certain premises situate in the city of Camden in trust for her mother, the complainant, and that she and her husband do convey them, in fulfillment of the trust, to the complainant.

The premises were conveyed by the complainant and her husband to their daughter, the defendant, by deed dated January 2d, 1879. It was acknowledged by the complainant on the 14th of April, 1879, and by her husband, who was at that time in Colorado, May 24th, 1879, and was recorded September 16th, 1879.

The bill alleges that the complainant, being seized of the premises, conveyed them by the deed last mentioned to her daughter, Mrs. Place, without any consideration whatever; that the complainant at that time resided in New Jersey and the defendants in New York, but that complainant's husband and two of her sons about two years previously moved to and located in Washington territory, and proposed to establish a home for her there, and she was desirous of selling her property in Camden and going to join her husband and sons in their new home; and in order to facilitate the transfer of the title, and to avoid the delay and difficulty incident to the execution of a conveyance so far away, she procured the conveyance in question to be executed by her husband, and had the title lodged in her daughter in trust for her to enable her to make a title promptly in case a sale should be effected.

The bill further alleges that she joined her husband in Washington territory in 1881; that he died there in 1885, and that she returned to New Jersey in 1887, and that she has at all times had and enjoyed the rents and profits of the premises.

The defendants, by their answer, admit the original ownership of the complainant, but deny the trust, and set up a consideration for the conveyance, viz.:

"A certain promissory note made by T. Newkirk [husband], S. C. Newkirk [complainant] and Miller Newkirk [son of complainant], for the sum of $948.02, dated at Camden, New Jersey, March 5, 1878, which was received and accepted by said complainant in full payment for the conveyance by her of said premises to this defendant Anna M. Place."

At the hearing it appeared that the complainant signed a receipt, which was produced by the defendants, dated September 27th, 1879, eleven days after the deed was lodged for record, by which she acknowledged the receipt from Mrs. Place of the promissory note described in the answer in payment for the property in question. But it also appeared that this promissory note was not delivered up by Mrs. Place to her mother at the date of the receipt in question, but was retained by her or her husband as an existing security until paid as hereinafter stated, and that her mother was always, up to the time of the filing of the bill, permitted to take and enjoy the income of the property.

It further appeared that complainant held a policy of insurance on her husband's life, and that after his death, in 1885, the money due on this policy, amounting to $2,300, was collected by Mr. Place, and that out of the proceeds he retained for his wife what was called the face of this note—the daughter, according to the complainant's evidence, forgiving the interest which had accrued upon it—and that he then forwarded the note itself to the complainant in Washington territory, and she produced it at the hearing canceled.

This is sworn to by the complainant and admitted by the defendant Mrs. Place on the stand. Besides, the complainant produced a letter written by Mr. Place, under date of January 2d, 1886, in which he mentioned the enclosure of a certificate of deposit for $500, part of $2,300 collected from the insurance company ; and, in pencil, at the bottom of the letter, in his handwriting, is this memorandum :

| | |
|---|---|
| "Amt. Susan.......................................................................... | $200 |
| " Walter Newkirk................................................................. | 300 |
| " L. B. Humphreys.............................................................. | 350 |
| " *Note held by Anna*.......................................................... | 948 |
| " Self................................................................................... | 500 |
| | "$2,298 " |

In the face of the evidence of this letter and of the positive testimony of the complainant and of her daughter, Mrs. Place, the defendant James K. Place swore that the note in question was given up to the complainant in September, 1879, when she signed the receipt above referred to. This testimony on his part, and his manner on the stand and other matters developed at the hearing, constrain me to place no reliance whatever upon his evidence.

This state of the proofs as to the promissory note disposes of the attempt on the part of the defendants to prove a consideration for the conveyance. And if it had been true that the amount due on the note formed the consideration for the deed, it was equally true that the note was retained by the payee and treated as a continuing obligation, showing that the conveyance was made to secure, and not to pay, the note in question, and then the result would have been that it was made by way of mortgage, and the debt having been paid by the insurance money, the complainant is of course entitled to a reconveyance.

But that is not the aspect given to the case by the pleadings, nor do I think that it is in accordance with the truth.

The complainant by her evidence supported the allegations of the bill as to the object of the conveyance. The defendants both denied most positively that the property was conveyed upon a trust for reconveyance, but declared that it was intended to be an absolute conveyance. Mrs. Place said that there was a reason for the conveyance, which she declined to state unless required to do so, but contented herself with saying that it was done to protect her mother. Mr. Place says that his wife always intended to reconvey the property to her mother.

This state of things throws upon the complainant the burden of proving the trust by written evidence of the character required

by the section of the statute of frauds which requires that trusts of land shall be "manifested and proved by some writing signed by the party" to be charged with the trust.

Complainant, in meeting this burden, produces several writings which she says are ample for that purpose. First, a paper signed by Mrs. Place, under date of September 27th, 1879—which, it will be observed, is the same date as the receipt given by the complainant to Mrs. Place above mentioned—and in Mr. Place's handwriting, as follows:

"*To whom it may concern:*

"I hereby authorize Mrs. S. C. Newkirk to collect the rents for the property 36 and 38 North Third street, Camden, New Jersey (including the five houses in the rear of the same).

"ANNIE M. PLACE."

She next produces the letter written and signed by J. K. Place, dated January 2d, 1886, before referred to, in which he speaks of having been to Camden, and proceeds to state the condition of the property in question, and certain debts for repairs against it, and the necessity for further repairs; says he will pay the agent who had charge of it (Mr. Humphreys) $350 on account of the arrearage (which is the item of $350 in the account at the foot of the same letter) out of the proceeds of the insurance money, and then adds:

"Camden is looking up. The population is now 57,000. A great many small houses have been recently erected, which rent low, and are preferred to rear houses. Two of *yours* have been empty about two months—4 and 5. I think *yours* is good property to hold."

It was admitted that this referred to the property in question.

Complainant next produces several letters written to her by her daughter, the defendant, since complainant's return from the West, and within a year past. They are all without date, and none of those from the complainant to which they are answers are produced by the defendants. But it was manifest, and in fact was proven, that complainant, in person and through her son, with whom she was living at Cape May, was continually urging her

daughter to reconvey the property. The letters produced were written in reply to such requests.

I extract from one, as follows :

" In regard to the deed—the deed is of small account to copy or get up. Murder will out. I have found out your fear. You fear Mr. Place may possibly have some hold on it. Firstly, he is no thief. Again, the power of attorney does not reach or touch real estate. A woman in N. York state has separate and distinct rights from her husband. He cannot touch her property. As I told you before, *my will says that property goes directly to you or your heirs in equal parts.* You shall have a copy if you desire. Now, mother, do be sensible and not allow yourself to be influenced by baby minds. If you desire to have this thing done, do it properly and legally; this is all that I insist upon. Get your satisfaction piece, otherwise any heir can come upon you. I signed several papers last year releasing people from any claim I might have on Fort Hamilton property. Something Mr. Baker [Mrs. Place's former husband] had before I knew him. Chamberlin sent it to me. Cora and Fanny also signed it; but I went first to see that it was all right to do so. Then have the transfer made here and in a proper manner. Also your will. You talk about trouble after your death. You are taking just the steps to get into trouble, little as it is. *Your will would be my law.* As I have told you repeatedly, *I could not touch a dollar contrary to your wishes;* but you talk as though you doubted me, and thought I was waiting to pounce on it. I do not think I have acted in a manner to warrant your unjust suspicions. As usual, you expect nothing, and you will not be disappointed ; so I meet with no disappointments of that kind. I will say, however, that *that transfer has* always been considered sacred by me, and will try not to take to heart what others may think to the contrary. Get your paper from these other parties, and come on and do it up right."

This letter is signed "Annie," and has an unsigned postscript, as follows :

" Don't worry about the simple copying of deed; it is the smallest part. And don't worry. I don't, and Mr. Place either *would touch one cent of your money.* People better try to excite some one else and give you a rest. You shall not be attacked, or *your property,* by blunders committed through others' bad advice."

The italics are mine.

In another letter, signed " affectionately your daughter A.," she says :

" Now I will not attempt to answer your letter in business way, to-day being Sunday. *I will forward the deed;* but would like to be assured by a lawyer understanding Jersey laws. I went to see Wallis, but he was out; *so you shall*

Newkirk v. Place.

*have it soon.* There is a request that I shall make of you first, but that is a small thing."

Another letter, signed "Annie," is as follows :

. "In reply to your letter, I will say to keep yourself from all unnecessary alarm. *You shall have your property, and in the course of a week I will have the papers made out and sent to you signed.* You can see the propriety of doing it correctly. Bungling work always makes work for lawyers in the end. Joseph Baker's estate is still unsettled and in law because his papers were drawn by one not understanding it. I have wanted to act discreetly in this thing, and if I have appeared otherwise it is my misfortune, for I am sure my heart is honest if my head lacks wisdom. Still, during the whole of this, I have asked wisdom, and I have tried not to feel even annoyed at your unjust suspicions. Please do not think I am holding it back. I have felt *if danger existed when the transfer was first made it is still there, or why did we do it ?* Who owned the Cape May property, you or father? It may be a week, possibly over, but *you shall have your property.* I request that you do not misrepresent me to Uncle Burns or any one else."

Another letter is as follows :

"Thursday Evening.
. "Dear Mother—Send on the original deed and have the thing properly ·drawn up here. It would be far better for you to come on and bring the deed with you, but if you will not come, send on the deed and I will have it .attended to immediately. There is nothing to hinder your coming on at once. Cora wants you now at this time; suits her better than later, and urges you to ·come for reasons which she will explain.

"Much love. Affectionately,                                        Annie."
"You can have it deeded to Frank on here as well as to wait and do it at C. M." [Postscript unsigned.]

Still another letter, dated " Friday," as follows :

"My Dear Mother—On reading the deed over we find it is not properly drawn. I think you had better come on at once and do this right, not in a slipshod way. I will prove to you that it is not correctly drawn. Will show you on here. Bring with you the original deed, also the deed that we made to you.      .      ·

"Hastily, with love,                                        Annie."

Half written above and half written below the word "Annie" ·are these words : " I decline signing anything unless drawn up here properly."

The deed prepared by complainant and here referred to was not produced.

Before considering the value of these letters as manifesting and proving a trust, I think it worth while, in justice to Mrs. Place, to stop and inquire why the intentions and wishes of the parties manifested by them were not carried out.

In the latter part of February, 1890, and apparently after the last of the letters produced had been written, the complainant visited her granddaughter, Cora, in New Rochelle, and there Mrs. Place called on her and handed her an unexecuted deed, which had been prepared by Mr. Wallis, from herself and her husband to her brother, Francis T. Newkirk, to whom the complainant had requested the conveyance to be made, covering the equal undivided three-fourths of the premises in question; also an unexecuted mortgage upon them from Francis T. Newkirk to Mrs. Place for $1,000, and stated that the deed would be executed by her and her husband upon condition that the mortgage should also be executed. At the same time Mrs. Place handed to her mother an unsigned statement in her husband's handwriting, written on two sheets of paper, the part of it more particularly bearing on the question in hand being as follows:

"The joint note of Mrs. S. C. Newkirk, T. Newkirk and Miller Newkirk, $948.02, dated 5 March, 1878, was given by these parties to Mrs. A. M. Place in settlement for money due to the latter, borrowed money. The interest due every six months at six per cent. per annum amounting to $28.44, should have been deducted from the rents, but as Mrs. Newkirk needed the money and did not want it withheld, it was charged to her as principal, and it is therefore clearly right that she should pay interest upon it. The idea advanced that it is illegal and dishonest to charge compound interest is, under the circumstances, a subterfuge. The $800 paid on account of the note 30 Dec., 1885, paid the interest due, $556.37, and $243.63 on the principal, leaving a balance due on the note at that time, $704.39. The interest upon this sum to Feb. 20, '90, is $192.42.    Total......................................................$896 91
"Add balance of account 1 March, '87.............................. 19 81
                                                                        ——— $916.72
   "  F. T. Newkirk's and wife notes.............................$100 09
   "  Int. on do. to Feb. 20, '90..................................... 11 58
                                                                        ——— 111 67
                                                                        $1,028 39

"As Mrs. Newkirk has repudiated the interest on the note and refused to pay it, it is necessary for Mrs. Place, for her own protection, to require a mortgage for the amount due before parting with the property, unless Mrs. Newkirk will pay the same in cash, which would be more satisfactory."

In explanation of this statement, it is proper to say that the note of March 5th, 1878, was drawn for $854.53 with interest at seven per cent., and at the bottom are found these figures in Mr. Place's handwriting:

> " 854 53
>    93 49   interest to the 27 September, 1879.
> ————
> " 948 02 "

and on the strength of those figures it was called a note for $948.02. And so in the receipt of September 27th, 1879, above referred to, it is described as a note of $948.02. As before stated, it was paid about January 1st, 1886, by deducting $948 from the life insurance money collected by Mr. Place, as clearly appears from the figures in pencil at the bottom of his letter to complainant of that date, and also from the evidence of the complainant given from memory. Those figures in pencil were apparently not observed by either the counsel or the parties at the hearing, and the defendant Place, taking his cue from the statement of February 20th, 1890, above quoted from, and apparently supposing that he could only be contradicted by the unsupported evidence of the complainant, swore that the amount retained out of the life insurance money to pay this note was $800, instead of $948. The statement of February 20th, 1890, is not only inaccurate in this particular, but also in the amount of interest due on the note, if only $800 had been paid.

The complainant declined to accede to the terms proposed by these documents, and the result was this suit. I am well satisfied that Mrs. Place would have made the desired conveyance at once and cheerfully, upon request, but for her husband. I believe that he started the objections which were from time to time raised to the conveyance, and influenced his wife against her better instincts to make them, and to postpone the conveyance on these excuses, and that his wife, at his suggestion, procured her mother

to come on to New Rochelle, away from the influence of her son, in order to carry out his plan. It is plain that he managed the defence and gave the instructions for the answer, and is alone responsible for the untrue defence therein set up. The original deed was, at the hearing, in his possession, having been from the first retained by the complainant until needed to prepare the contemplated reconveyance, when it was sent to the daughter. Yet neither that deed nor a single letter from the complainant to her daughter was produced at the hearing.

Turning now to the question of the value of the letters in satisfying the demands of the statute. It is well settled that the statute does not require that the trust should be created by writing, but only that it be *"manifested and proven"* by that means, and that this may be done by letters or other writings written long after the trust was created, and that such writings need not be subscribed by the name of the party to be charged with the trust, but that it is sufficient if the name appears in the proper handwriting in the body of the writing, and that for such purpose initials are sufficient. *Smith* v. *Howell, 3 Stock. 350; Hutchinson* v. *Tindall, 2 Gr. Ch. 357* (at *p. 362*); *McVay* v. *McVay, 16 Stew. Eq. 47; Jamison* v. *Miller, 12 C. E. Gr. 586; Brown Stat. of Frauds § 97.*

The writings must show the subject and terms of the trust. *Smith* v. *Matthews, 3 DeG., F. & J. 139; Forster* v. *Hale, 3 Ves. 696.*

But for the purpose of arriving at the meaning of the writings, all the circumstances of the case may in this as in all other cases be taken into account. *Morton* v. *Tewart, 2 Younge & Coll. Ch. 67* (at *pp. 77, 79*).

The circumstances here are, that the complainant had, in 1879, conveyed premises worth from $5,000 to $6,000 over and above the encumbrances to her daughter and without any consideration, and that she has, with her daughter's consent, taken and received from the first all the rents and profits from them. Admitting that the complainant's statement of the objects of the conveyance is not strictly true, still it is evident, from the daughter's account of the transaction, that it was not the object or purpose of her

mother to make her a present of the property, and that she was a mere depositary of the title and held it upon *some* trust. She denies that there was an understanding that the property should be reconveyed to her mother, but she does not deny that she was in some way to hold it for her mother's benefit. She does say it was conveyed to her for her mother's protection. In this situation her mother asks her to reconvey it to her, or to convey it to her son. Then ensues the letters and other papers above set out. Reading all the documents in light of the circumstances, it seems to me that they do show, most conclusively, that she held the property simply and solely for her mother's benefit, and subject to her mother's direction. At the start is the direction about the rents, signed by Mrs. Place. Then comes the letter signed by Mr. Place January 2d, 1886, which clearly establishes the trust as against him. Then, coming to the recent letters written by Mrs. Place, we have the statement that she had made her will devising it to her mother. Further on she says, " I have told you repeatedly I could not touch a dollar contrary to your wishes." Again, " I will say, however, that that transfer has always been considered sacred by me." Then, in another letter, " I will forward the deed, but would like to be assured by a lawyer understanding Jersey laws." In still another letter, " You shall have your property;" and " in the course of a week I will have the papers made out and sent to you signed." Further on in the same letter, " You shall have your property." It was admitted at the hearing, and there is no dispute, that the property referred to in these letters is the property in question ; and as this was the only transaction of the kind between the parties, the letters can refer to nothing else.

In *Forster* v. *Hale, 3 Ves. 696,* Lord Alvanly held a trust proven by language much less clear and direct than this, and his view was approved on appeal by Lord Rosslyn. *5 Ves. 315.* The same may be said of the case of *Morton* v. *Tewart, 2 Younge & Coll. Ch. 67.*

The present case is clearly distinguishable from *Steere* v. *Steere, 5 J. C. R. 1,* where the allegation was a trust in favor of the father of the party sought to be charged, and the letters produced

tended to prove a trust in favor of the brothers.   And also from *Smith* v. *Matthews, 3 DeG., F. & J. 139,* where the question was, whether the trust was for the benefit of the sister (and her children) of Clark, who was sought to be charged, or whether it was for the benefit of the sister's husband.   The husband was a groceryman, and owned the house in which he carried on his business.   He transferred both the house and the business to Clark in trust.   The master of the rolls held that Clark held both the house and the grocery business for the benefit of the wife and children, but the lord-chancellor held that the house was not included in the trust for the wife and children.

I am entirely satisfied that the complainant is entitled to the relief prayed for.   There will be a decree declaring that the defendant Anna M. Place holds the premises in question in trust for the complainant, and that she and her husband do convey the same to the complainant by deed containing covenants against their own acts ; that they account for the rents and profits which they have taken since the bill was filed, and that they pay the same to the complainant, with the costs of suit.